Thank you very much. I apologize. Mr. Hartman, you may proceed. Thank you, Your Honor. May it please the Court? Jeffrey Hartman, appearing on behalf of the United States Attorney General. Your Honor, in this case, Mr. Hasan-Nayem presented a fairly straightforward claim of political persecution that was centered around three events in the 2018 election of Bangladesh. And Congress gave the agency tools in the REAL ID Act to evaluate his credibility. In this case, the agency employed nearly all of those tools to conclude that inconsistencies. And as we've been discussing this morning, the immigration judge's demeanor finding undermined his credibility. And because Mr. Hasan-Nayem has not identified evidence that compels the conclusion that his testimony is credible, this Court should deny the petition for review. And under our case law, we give deference to credibility determinations, especially if they're supported by substantial evidence. Correct, Your Honor. And as this case is for you illustrated, the Court draws all inferences from the record in favor of upholding the agency's adverse credibility determination. And I guess I'd like to drive first at the demeanor finding unless the Court has another specific question. And Todovarik, I think, is the most illustrative case on that point. It involved a Serbian man who disclosed his sexual orientation and suffered mistreatment before the immigration judge. The immigration judge made a demeanor finding that Todovarik's demeanor in court wasn't coextensive with someone who had— it didn't correspond with his sexual orientation claim, basically. And this Court concluded that that was speculation based on the immigration judge's impermissible personal beliefs. And so even though there were other factors in that case that undergirded the agency's adverse credibility determination, that type of impermissible demeanor finding that's apparent on the record that it's impermissible, I think, is the outer bounds. And the agency's decision here is clearly on the other side of that line. As you know, Your Honor, at AR-187, the immigration judge is so concerned that his testimonies wrote— and it sounds like he's reading a memorized statement—that the immigration judge stops him and asks him, like, can we look around the room to make sure that you're not reading this statement to me? Elsewhere in the record, his attorney at AR-185 asked the immigration judge for an instruction that Mr. Hasan Naeem stop testifying because he's speaking over her in a narrative format and isn't being responsive to the questions. When he's asked about the harm that he experienced in December of 2018, he goes on and talks about the types of things the rival lobby league would do before circling back to the question about the level of harm he experienced. And so it's our submission that the demeanor finding here was documented contemporaneously on the record and that Mr. Hasan Naeem has identified no evidence that compels reversal. And we point to saying in an unpublished case where this court pointed out, because the deference to the immigration judge's demeanor finding is so great, because only the immigration judge is in a position to identify cadence, body language, is he reading something in the room, that even where the demeanor finding isn't particularly strong in detail, it can still be supported by substantial evidence. And here the immigration judge went beyond that. She noted her concerns in real time. And unless the court has other questions. I have a question that is not specific to demeanor, but there's something that we've said that when an immigration judge finds the petitioner's testimony to be non-credible, it's still incumbent upon us to look at the rest of the evidence and to determine whether the rest of the evidence establishes a right to an asylum. How does that work exactly where the application is based on the person's testimony? Do you understand my quandary? Of course, Your Honor. I don't think this is a case where that would be. So first, the agency did do that analysis here. The immigration judge and the board both considered the country conditions evidence, the human rights report, the refugee report from Canada, in evaluating whether Mr. Hassan Naim had an independent, well-founded fear of persecution. And I think in a case where this would matter, where there was a pattern or practice of persecution against a particular minority, so that regardless of whether Mr. Hassan Naim could tell a coherent story of political persecution, that someone in that persecuted minority would be persecuted just based on that membership. And so I think that's why this court, that's the rationale undergirding. So it really would be more about, so I mean, it seems to me, and this comes up a lot in these cases, I mean, it seems to me what we're saying when we're saying that, that you have to look at the rest of the evidence, is really not about past persecution, because past persecution really rises or falls with the person's testimony. It's really evidence of country conditions and things like that. That would lead to a future persecution analysis, and it doesn't really have anything to do with past persecution at all. I think in the minority of cases that that's true. I mean, there could be like mental competency cases where the individual doesn't remember what happened to them, but there's a knowledgeable witness that can attest to what happened in the past. So I don't want to be so categorical. This isn't that type of case. But I think in the minority of cases, non-citizens' incredible testimony prevents them from establishing a subjective fear of persecution, which is necessary to secure that presumption of a well-founded fear for asylum. And the purpose of looking to the country conditions evidence, in addition to the credibility determination that's looking forward, can this person establish a well-founded fear of persecution based on this country conditions evidence? And this is a really high burden, I think. It's obviously one that Mr. Hasan has established in the country conditions report. It does talk about political persecution being a primary problem, but it doesn't establish that he in particular would suffer persecution. The level of generalized political unrest does not rise to that level where the court or the agency could look at the record evidence and say, you know, you have a well-founded fear of persecution, 10% or more likely than not for the withholding standard. I'm happy to answer the court's other questions about the inconsistencies. I have no questions. Judge Carnes, do you have any questions? No, I don't. Thank you. Thank you very much, Mr. Hartman. I appreciate you being here. Counsel, you have time remaining for rebuttal. You're muted, I believe. I'm sorry. That's okay. Just a couple of points here. I think a community finding coexisting with other initiative of lack of credibility would have more weight, should be given more weight, and take on a greater significance than one that is standing alone. Well, I'm not suggesting that every credibility issue relied upon by the agency, you know, inconsistency issue regarding testimony and documents relied upon by the agency, has been eviscerated. I think they've been challenged fairly, and I therefore believe that the meaner finding should be viewed in that light as standing next to a rather weak denial based on other credibility criteria. The other very, very quick point is that the deference that is normally given to NIJ's meaner finding, those variables, you know, being in the same room, body language, and that. Because of the way this hearing was conducted, I mean, I suppose it's a question of how relevant those were. I'm not saying that the agency doesn't have a right to look seriously at how these things are viewed, but I think when it comes to a meaner finding, that needs to be taken into account. And that's all I have. If there are any questions from the panel, please ask. Thank you very much, counsel. Thank you to both of you for your argument this morning. We appreciate it. The Court will be in recess until tomorrow morning. Thank you. Thank you all.